The PEOPLE of the State of Colorado, Petitioner–Appellee,

v.

In the Interest of T.R., a Child,

and Concerning P.R., Respondent–Appellant.

No. 90CA2183.

Colorado Court of Appeals, Div. IV.

Jan. 28, 1993.

Rehearing Denied Feb. 25, 1993.

Certiorari Denied Nov. 1, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Katherine M. Clark, Asst. Atty. Gen., Denver, for petitioner-appellee.

James H. Chalat, P.C., Jonathan S. Willett, Denver, for respondent-appellant.

Opinion by Judge PLANK.

T.R., a juvenile, appeals the judgment adjudicating him to be delinquent entered upon a jury verdict finding that he committed acts that would constitute criminally negligent homicide if committed by an adult. He also appeals the court's order requiring him to pay restitution. We reverse.

With T.R. driving, he and two friends left their high school for lunch. T.R. spun the car around several times in the school parking lot and then pulled out onto the street without stopping. One passenger testified that the speedometer indicated 40 m.p.h. as they left the parking lot. T.R. continued to accelerate, and according to a passenger, when he passed a state patrol vehicle, he said that he was going to "outrun the cop." Both passengers estimated T.R. accelerated the car to a speed of 70–80 m.p.h.

Soon thereafter, the victim's car stopped at an intersection crossing T.R.'s direction of travel and then started to cross the street. T.R.'s vehicle hit the victim's car broadside, and the victim sustained multiple injuries which, after several weeks of hospitalization, proved fatal.

## I.

■ T.R. first contends that the trial court erred by not instructing the jury on his theory of defense. We agree.

T.R. tendered the following instruction: A driver is required to stop at a stop sign posted at an intersection with a highway. After stopping, the driver is required to proceed cautiously, yielding to vehicles that are not required to stop or yield and which are approaching so closely as to create an immediate hazard during the time the driver is moving across or within the intersection.

One of the passengers in T.R.'s car testified at trial that the victim was looking straight ahead and did not look at T.R.'s vehicle, and there was also evidence of clear visibility. Premised on this evidence,

T.R. argued that the above instruction should be submitted as pertinent to his theory that the victim's alleged negligence in crossing the intersection caused the accident.

The trial court rejected the instruction because there was no evidence that the victim failed to stop at the intersection. The court did not, however, assist the juvenile in drafting a proper instruction encompassing his theory of the case, namely, that the victim had stopped at the intersection, but proceeded through without yielding to T.R.'s oncoming car. Thus, no jury instruction given encompassed this theory of the case.

■ It is for the jury, and not the court, to determine the truth of an accused's theory; therefore, a defendant (or, as here, a juvenile) is entitled to a theory of defense instruction if any evidence, even if improbable, supports the theory. *People v. Fuller*, 781 P.2d 647 (Colo.1989). As well, the trial court has an affirmative obligation to assist counsel in correcting a tendered instruction or incorporating the substance of the theory in an instruction drafted by the court. *People v. Nunez*, 841 P.2d 261 (Colo.1992).

■ If, however, an accused's theory of the case is only a general denial, no specific theory of the case instruction is required. *People v. Dillon*, 655 P.2d 841 (Colo.1982). As well, "the jury instructions setting forth the elements of the offense and the burden of proof, standing alone, can encompass, embody, or take the place of a defendant's theory of the case." *People v. Nunez, supra* at 265.

Here, T.R.'s theory of the case was more than a mere denial of the charge of vehicular homicide. Rather, his theory was that the victim failed to yield. No instruction was given to the jurors stating that they were to consider this defense; however, T.R. did present evidence, although minimal, that the victim failed to yield. Under the rule of *Fuller, supra*, the weight to be given this evidence, even if improbable, should be determined by the jury, and the

trial court erred by not giving a theory of the case instruction on the defense once T.R. tendered such an instruction.

■ Further, we hold that such error mandates reversal. T.R. specifically requested such an instruction when he tendered the rejected instruction. Thus, the trial court was obligated to assist in preparing a proper instruction. *See People v. Nunez, supra.*

## II.

T.R. asserts a number of other instances of error, which for purposes of retrial we have considered. As to each, we either perceive no error, no abuse of discretion by the trial court, or conclude that they may be properly resolved on retrial.

■ First, we reject T.R.'s assertion that he was denied due process by virtue of the fact that, in examining the brakes on T.R.'s vehicle, a state trooper "de-adjusted" them. The trial court did not abuse its discretion in concluding that there had been no destruction of exculpatory evidence. Its finding in this regard, including its finding that there was no showing of bad faith on the part of the trooper, has evidentiary support. *See People v. Enriquez,* 763 P.2d 1033 (Colo.1988); *People v. Wyman,* 788 P.2d 1278 (Colo.1990).

■ Second, the trial court did not err in ruling that if T.R. asserted the defense of defective brakes, the People could admit rebuttal evidence that T.R.'s brakes were functioning properly at a high speed two hours prior to the accident. Such ruling was within the discretion of the trial court concerning the admission of rebuttal evidence. *See People v. Rowerdink,* 756 P.2d 986 (Colo.1988).

■ Third, in light of remarks and questioning by defense counsel that were aimed at creating an inference that the victim was at fault for the accident, the trial court did not err in permitting the prosecution to present testimony by the victim's husband of the victim's good driving habits. *See* CRE 406; *Bloskas v. Murray,* 646 P.2d 907 (Colo.1982); *Perrin v. Anderson,* 784 F.2d 1040 (10th Cir.1986).

However, in our view, a portion of the victim's husband's testimony was character, and not habit, evidence, and was, thus, improperly admitted.

As stated in *McCormick on Evidence* § 190 at 574–55 (3rd ed. 1984):

> Character is a generalized description of a person's disposition in respect to a general trait, such as honesty, temperance, or peacefulness.... Habit is more specific. It denotes one's regular response to a repeated situation.... If we speak of character for care, we think of a person's tendency to act prudently in all varying aspects of life—in business, at home, in handling automobiles, and in walking across the street. A habit, on the other hand, is a person's regular practice of responding to a particular kind of situation with a specific type of conduct.... Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's work, or of driving in his automobile without a seat belt.

Thus, while evidence that the victim drove through the intersection everyday and any cautions she habitually took while proceeding through this intersection were properly admitted as habit; testimony that she was a "cautious driver" is character evidence and must be treated under CRE 404, rather than CRE 406.

■ Fourth, we are not persuaded by T.R.'s argument that the trial court erred in admitting a photograph of the victim and her husband taken eight months before the accident for purposes of identifying the victim.

The trial court acted within its discretion in determining that the photograph was neither too inflammatory nor too unfairly prejudicial to be properly allowed into evidence. *See People v. Viduya,* 703 P.2d 1281 (Colo.1985).

Moreover, in light of the photograph being admitted for purposes of identification, T.R.'s stipulation that the victim died from

injuries received in the accident did not affect its admissibility.

■ Fifth, a person with reasonable experience may express an opinion of the speed of an automobile or other moving objects coming under his observations without proof of further qualifications. *Eagan v. Maiselson,* 142 Colo. 233, 350 P.2d 567 (1960). Consequently, the trial court properly admitted the testimony of several eyewitnesses giving their estimate of the speed of T.R.'s car.

■ Sixth, we find no error in the trial court's admission of the passenger's statement reporting that T.R. had exclaimed that he intended to "outrun the cop." Whatever error there may have been in the court's characterization of the statement, it was not hearsay and was admissible as an admission of a party opponent. *See* CRE 801(d)(2). Also, inasmuch as the statement was not hearsay, on retrial, no instruction on the weight to be accorded out-of-court statements should be given.

### III.

■ T.R.'s challenge to the restitution order presents a significant issue which we also address for guidance to the trial court in the event that retrial results in a reconviction.

T.R. claims the trial court erred in ordering him to pay restitution of $148,000. We agree in part.

T.R. first claims that restitution was improperly ordered because, since he served his full sentence of incarceration, it was not part of a conditional release, either parole or probation. We disagree.

Section 19–2–703(4), C.R.S. (1992 Cum. Supp.) provides in part the following:

If the court finds that a juvenile who ... is adjudicated a juvenile delinquent has damaged the personal or real property of a victim, that the victim's personal property has been lost, or that personal injury has been caused to a victim as a result of the juvenile's delinquent act, the court shall enter a sentencing order requiring the juvenile to make restitution for actual damages done to persons or property.

■ Unlike the situation where an adult is involved, *see People v. Powell,* 748 P.2d 1355 (Colo.App.1987), a court is not barred from imposing a restitution order when it also sentences an adjudicated delinquent to incarceration, as long as the court provides enough flexibility in the order so that the juvenile may comply. *People in Interest of A.R.M.,* 832 P.2d 1093 (Colo.App.1992).

The legislative intent underlying 19–2–703(4) is that, "wherever possible, restitution should be required." Further, restitution serves society's interest by encouraging juveniles to be responsible for the damage they cause. *People in Interest of A.R.M.,* 832 P.2d at 1096.

Hence, if T.R. is adjudicated delinquent on retrial, an appropriate restitution order will be proper irrespective of any other remaining portions of any dispositional order that the court may enter.

### A.

■ T.R. next contends that the effect of ordering him to pay $148,000 in restitution is to subject him to the jurisdiction of the juvenile court indefinitely into his adult years, and that, therefore, the restitution order cannot stand. Again, we disagree.

Section 19–2–102(5), C.R.S. (1992 Cum. Supp. 8B) provides:

The juvenile court may retain jurisdiction over a juvenile until all orders have been fully complied with by such person, or any pending cases have been completed, or the statute of limitations applicable to any offense which may be charged has run, regardless of whether such person has attained the age of eighteen years, and regardless of the age of such person.

Hence, if T.R. is adjudicated delinquent on retrial, the juvenile court will retain jurisdiction over him until any restitution order is fully complied with.

### B.

■ T.R. also argues that the amount of restitution was improper because of the

effects of a civil suit settlement between the victim's estate and her spouse, and T.R.'s insurance company. T.R. also argues that § 10–4–713, C.R.S. (1992 Cum. Supp.) bars a subrogation claim against him by the victim's insurer, and that, therefore, the insurer is not a proper party to receive restitution pursuant to § 19–2–703, C.R.S. (1992 Cum.Supp.). We agree that certain additional issues must be considered by the trial court in determining appropriate restitution.

The victim's estate and the victim's spouse brought an action against T.R., and that action was defended by his automobile liability insurer (here, T.R. and victim had the same insurance company). The estate of the victim and the insurance company reached a settlement for the full insurance policy limit of $100,000. In that agreement, the estate agreed to waive any further claims against T.R. arising from the accident.

The trial court, after reviewing the victim impact statements and taking testimony from an attorney representing the insurance company in the civil suit, found the following actual damages: $107,971 to State Farm Insurance (the automobile liability insurer) for the amount paid to both the victim's estate and to the hospital for the expenses of the victim's care under the victim's insurance policy; $34,363 to Comprecare for medical benefits accorded the victim beyond the hospital expenses; $2000 to the Victim's Compensation Fund; and $5,465 to the victim's husband for his direct injury. The court also held that the $100,000 settlement received by the victim's estate from T.R.'s automobile liability policy was not attributable to either medical expenses nor to burial expenses, and accordingly, it did not set-off any portion of the restitution with proceeds from the settlement.

We note first that the settlement agreement between the victim's estate and the insurer does not designate the proceeds as being for any particular purpose. In fact, the attorney for the estate in the civil suit testified that, "[e]ssentially that $100,000 was not allocated in any way." Thus, we

hold that the trial court could not "apportion" those proceeds solely to loss of contribution to household expenses without any evidence that the settlement amount was for that purpose only.

■ Further, § 16–11–101.5(2), C.R.S. (1992 Cum.Supp.) provides that "any amount paid to a victim or to a member of the victim's immediate family under an order of restitution shall be set-off against any amount later recovered as compensatory damages by such victim in ... state civil proceeding." While this statute contemplates that a civil settlement would follow a criminal conviction, here, the civil suit was settled prior to the adjudication of delinquency and the restitution order. We hold that statute is still applicable. Thus, a restitution payment made by a defendant (or, as here, a juvenile delinquent) should be set-off against any civil claim brought by the victim. *People v. Johnson*, 780 P.2d 504 (Colo.1989).

Accordingly, if this issue arises on remand, the trial court is instructed to make specific findings on the apportionment of actual damages that the victim's estate was compensated for under the civil settlement agreement and to set off that amount against any restitution ordered.

■ We also hold that the trial court cannot order T.R. to pay restitution to the victim's automobile insurer pursuant to § 19–2–703, C.R.S. (1992 Cum.Supp.) because the insurer has no right of subrogation to sue T.R. civilly under the No–Fault Insurance Act, 10–4–713, C.R.S. (1992 Cum. Supp.).

Section 19–2–703(4) provides that an order of restitution to a juvenile delinquent "shall require payment of insurers and other person or entities succeeding to the rights of the victim through subrogation or otherwise, if appropriate." Thus, it differs from the similar provision in the criminal code, § 16–11–204.5(4), C.R.S. (1986 Repl. Vol. 8A) which provides that, " '[v]ictim', as used in this section, means the party immediately and directly aggrieved by the defendant ... as well as others who have suf-

fered losses because of a contractual relationship with such party...."

However, the No–Fault statute, § 10–4–713(1), C.R.S. (1992 Cum.Supp.) provides the following in relevant part:

Neither any person eligible for direct benefits described in section 10–4–706 nor any insurer providing benefits described in section 10–4–706 shall have any right to recover against an owner, user, or operator of a motor vehicle or against any person or organization legally responsible for the acts or omissions of such person in any action for damages for benefits required to be paid under section 10–4–706 ...

The benefits set out in § 10–4–706 are the Personal Injury Protection (PIP) benefits.

Under the plain wording of this statue, neither the victim's estate nor the automobile liability insurer has any right of recovery against T.R. for the PIP benefits paid to the victim. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15, 18–19 (Colo.1991) ("Although the automobile accident victim may bring a tort action if the victim satisfies one of these threshold criteria, the PIP benefits are excluded from any recovery obtained in that tort action."). As well, the insurer has no independent right to indemnity under the No–Fault statutes. *Peterson v. Kester,* 791 P.2d 1185 (Colo. App.1989). Thus, under the No–Fault statutes, each insurers must absorb the PIP benefit payments made on behalf of its insureds.

Hence, we hold that, in regard to payments constituting PIP benefits, it is improper to order a payment of restitution to the insurer here that has no civil right of subrogation against T.R.

Therefore, the trial court cannot order T.R. to pay restitution to a PIP benefits provider. However, the payment of restitution to Comprecare can be properly ordered. *People in Interest of P.J.N.,* 664 P.2d 245 (Colo.1983).

## C.

T.R. also argues that payment of $148,-000 in restitution causes him serious hard-

ship and violates the Eighth Amendment because it is cruel and unusual punishment.

Although we have difficulty in perceiving how a restitution order for direct losses suffered by a victim because of T.R.'s malfeasance could implicate the Eighth Amendment, we decline to address these contentions since they may not arise on remand.

## IV.

█ Lastly, T.R. contends that the trial court erred when it ordered him to pay the costs of prosecution. Since this issue may arise on remand, we address it now in the interest of judicial economy. We agree with T.R. that he cannot be required to pay the costs of prosecution.

After sentencing, the People moved to include the cost of prosecution in the restitution order, in the amount of $1100 to the State Court Administrator. Over T.R.'s objection, the trial court found that § 16–11–501, C.R.S. (1992 Cum.Supp. Vol. 8A) covers any "person", including juveniles adjudicated delinquent.

Section 16–11–501 provides that, "Where any person ... is convicted of an offense, the court shall give judgment in favor of the [prosecution] and against the offender of the amount of the costs of prosecution and any fine imposed."

T.R. was not convicted of a criminal offense, rather, he was adjudicated delinquent. Hence, § 16–11–501 does not apply. Assessing costs are strictly a matter of statute, and without statutory authority, the court has no power to require T.R. to pay the costs of prosecution. *Glavino v. People,* 75 Colo. 94, 224 P. 225 (1924).

Hence, the judgment is reversed and the cause is remanded to the trial court for a new trial consistent with this opinion.

TURSI and METZGER, JJ., concur.