COLORADO COURT OF APPEALS                    2017COA121

Court of Appeals No. 16CA1612
Adams County District Court No. 15CR1433
Honorable Robert W. Kiesnowski, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Steven Robert Paul Stanley,

Defendant-Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE FREYRE
Booras, J., concurs
Webb, J., specially concurs

Announced September 7, 2017

David J. Young, District Attorney, Cameron M. Munier, Senior Deputy District
Attorney, Brighton, Colorado, for Plaintiff-Appellant

Bendinelli Law Firm, PC, Mark G. Mayberry, Westminster, Colorado, for
Defendant-Appellee

¶ 1     In this prosecution appeal of a restitution setoff, we must reconcile the dual policy interests underlying the restitution statute, § 18-1.3-603, C.R.S. 2016, of fully compensating a victim on the one hand and of precluding double recovery by the victim on the other.

¶ 2     The prosecution asks us to reverse the trial court's order awarding the defendant, Steven Robert Paul Stanley, a $25,000 setoff against restitution of $30,000, an amount paid to the victim by the Crime Victim Compensation Program (CVCP). The setoff arose from a policy-limits settlement between the victim and Stanley's automobile insurance company. Despite uncontroverted evidence of this settlement, the prosecution argues that Stanley failed to sufficiently prove entitlement to a setoff because he did not show that the settlement proceeds were "earmarked" for the same expenses reimbursed by the CVCP, leaving open the possibility that the victim used the proceeds for losses not compensated by the CVCP.

¶ 3     Because the level of specificity for apportioning urged by the prosecution would render meeting a defendant's burden of proving a setoff under § 18-1.3-603(3) and (8)(c)(I) impractical — and in

1

some cases impossible — we conclude that a defendant sufficiently meets his or her burden of going forward to invoke the trial court's discretion  to award a setoff by showing that the settlement included one or more categories of loss (expenses) paid by the CVCP and covered by the restitution order.

¶ 4     Thus, we affirm in part the trial court's ruling on apportionment.  However, because the victim may have used some or all of the settlement proceeds for losses not compensated by the CVCP, we remand the case to permit the prosecution to respond by showing that the victim used or allocated settlement proceeds for losses proximately caused by Stanley's criminal conduct but which were not paid by the CVCP and covered by the restitution order. This procedure gives effect to the restitution statute's legislative intent "to make full restitution" to victims for their losses.  § 18-1.3-601(1)(b), C.R.S. 2016.  If the prosecution makes such a showing, the trial court should amend its restitution order by reducing the amount of the setoff.

I.     The Restitution Order

¶ 5     This case arises from a traffic accident that occurred on April 11, 2015.  On May 7, 2015, Stanley's automobile insurer, Geico

Indemnity Co. (Geico), entered into a "Release in Full of All Claims" (the Release) with the victim and her husband. Under the settlement, Geico paid the victim $25,000 for all claims related to and stemming from the accident in exchange for a full and final release of all claims against Stanley and Geico. The Release released and forever discharged Stanley and Geico

> [f]rom any and every claim, demand, right or cause of action, of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof, including, but not limited to, all causes of action preserved by the wrongful death statute applicable, any loss of services and consortium, any injuries which may exist but which at this time are unknown and unanticipated and which may develop at some time in the future, all unforeseen developments arising from known injuries, and any and all property damage resulting or to result from an accident that occurred on or about the 11th day of April, 2015 . . . .

¶ 6 On February 4, 2016, Stanley pleaded guilty to felony vehicular assault, driving under the influence, and careless driving. Under the plea agreement, the trial court deferred the entry of judgment and sentence on the felony for four years, and sentenced Stanley to four years of concurrent probation on the misdemeanor

convictions.  The court gave the prosecution ninety days to submit a restitution request.

¶ 7    On May 3, 2016, the prosecution filed a motion to impose restitution and attached a report from the CVCP.  It showed that the CVCP had paid the victim $30,000, the maximum amount allowable by statute, for pecuniary losses proximately caused by Stanley's criminal conduct.  *See* § 24-4.1-109(2)(b), C.R.S. 2016.  It paid the victim $8048 for lost wages and $21,952 for medical expenses.[1]  The report stated that "[e]ach bill received by CVCP is verified to ensure that it is crime related; that no other funding source was responsible (insurance) and to verify the most up to date balance."

¶ 8    Believing that the insurance Release and settlement satisfied his restitution obligation, Stanley never filed an objection to the prosecution's motion for restitution.  On June 14, 2016, the court granted the unopposed motion and ordered Stanley to pay the victim $30,000 in restitution.  Later that same day, Stanley filed a

---

[1] The exact date of the CVCP's payment to the victim is not clear from the record.  The CVCP report contains a notation that it was printed on "2/9/2016" and was filed with the court on "May 3, 2016."

Motion for Reconsideration of the Restitution Order, explaining his misunderstanding and requesting a hearing and a setoff. The court granted Stanley's hearing request.

¶ 9    At the hearing, the parties relied on two documents — the CVCP report evidencing the $30,000 payment and the Release evidencing the $25,000 settlement. Neither party presented any other evidence.

¶ 10    The prosecution argued that because the Release constituted an unapportioned settlement, Stanley bore the burden of proving that the settlement proceeds were intended to compensate the victim for the same lost wages and medical expenses compensated by the CVCP. Specifically, "[the Release] talks in no way about where this $25,000 is to be allocated. Is it supposed to go to medical or pay for the damages to the vehicle?" Relying on *People v. Lassek*, 122 P.3d 1029 (Colo. App. 2005), the prosecution argued that the "entire amount could have simply gone to [nonpecuniary losses not covered by the restitution statute]" and asked the court to find that Stanley had not met his apportionment burden.

¶ 11    Stanley agreed that he bore the burden of establishing the existence of a setoff. He asserted that the Release "broadly

5

apportioned" the proceeds through the language stating an intent to compensate for "any and every claim" for loss of services, as relevant to wage loss, and for personal injuries and all consequences of them, as relevant to medical expenses. He reasoned that the settlement proceeds necessarily included the medical and lost wages compensation the victim received from the CVCP. He further argued that the CVCP was remiss in failing to offset restitution by the settlement amount under § 24-4.1-110(1), C.R.S. 2016.

¶ 12    The trial court held that $30,000 in restitution was reasonable, due, and owing. It further held that the Release's broad language was "all encompassing and [that] it include[d] every type of claim imaginable and any type of injury imaginable." It found the Release "contemplate[d] payment for the very same categories that are set forth in the prosecution's restitution report," and noted that these types of releases never apportioned proceeds to specific loss categories. Therefore, it awarded Stanley a $25,000 setoff against restitution and ordered him to pay the $5000 net amount.[2]

---

[2] Stanley does not cross-appeal the court's findings concerning the reasonableness of the $30,000 restitution award.

## II.     Analysis

¶ 13     Relying on *Lassek* and *People in Interest of T.R.*, 860 P.2d 559 (Colo. App. 1993), the prosecution urges us to reverse the court's order, arguing that the Release is an unapportioned settlement that does not "earmark" the proceeds for the same expenses compensated by the CVCP, as required by these cases. While we acknowledge that *Lassek* and *T.R.* could be read to support this argument, for the reasons described below we conclude that these cases do not require the level of specificity urged by the prosecution.[3]

### A.     Standard of Review

¶ 14     We review a trial court's restitution award for an abuse of discretion. *People v. Sieck*, 2014 COA 23, ¶ 5. A trial court abuses its discretion when it misconstrues or misapplies the law, *id.*, or when its decision fixing the amount of restitution is not supported by the record, *see People v. Rivera*, 968 P.2d 1061, 1068 (Colo. App. 1997). "We will not disturb the district court's determination as to

---

[3] In any event, we are not bound by decisions of other divisions of this court. *People v. Smoots*, 2013 COA 152, ¶ 20, *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

the proper amount of restitution if it is supported by the record." *People v. Bohn,* 2015 COA 178, ¶ 8.

¶ 15    We review and interpret statutes de novo. *People v. Padilla-Lopez,* 2012 CO 49, ¶ 7. When construing statutes, we aim to ascertain and give effect to the intent of the General Assembly. *Id.* We accord words and phrases their plain and ordinary meanings. *Id.* "Where the language is clear, it is not necessary to resort to other tools of statutory construction." *Goodman v. Heritage Builders, Inc.,* 2017 CO 13, ¶ 7.

## B.    Applicable Law

¶ 16    As part of "[e]very order of conviction," a trial court must order a defendant to pay restitution if the defendant's conduct caused pecuniary loss to a victim. § 18-1.3-603(1); *People v. Reyes,* 166 P.3d 301, 302 (Colo. App. 2007). Restitution means "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2016. The General Assembly has declared restitution to be a mechanism for rehabilitating offenders, deterring future criminality, and reducing the financial burden on and compensating victims and their families for their

8

losses.  § 18-1.3-601(1)(c)-(g).  The restitution statute must be liberally construed to accomplish these goals.  § 18-1.3-601(2).

¶ 17    The court bases its restitution order on information provided by the prosecuting attorney.  § 18-1.3-603(2).  The prosecution bears the burden of proving the amount owed by a preponderance of the evidence, *People v. Smith*, 181 P.3d 324, 328 (Colo. App. 2007), while the defendant bears the burden of proving any setoff.  *Lassek*, 122 P.3d at 1035.

¶ 18    Compensable losses are defined in §§ 24-4.1-109(1) and (1.5), and include the following:

> (a) Reasonable medical and hospital expenses and expenses incurred for dentures, eyeglasses, hearing aids, or other prosthetic or medically necessary devices;
>
> (b) Loss of earnings;
>
> (c) Outpatient care;
>
> (d) Homemaker and home health services;
>
> (e) Burial expenses;
>
> (f) Loss of support to dependents;
>
> (g) Mental health counseling;
>
> (h) Household support; except that household support is only available to a dependent when:

(I) The offender is accused of committing the criminally injurious conduct that is the basis of the dependent's claim under this article;

(II) As a result of the criminal event, the offender vacated any home the offender shared with the dependent; and

(III) The dependent provides verification of dependency on the offender at the time of the criminal event.

(1.5)(a) Losses compensable under this part 1 resulting from property damage include:

(I)(A) Repair or replacement of property damaged as a result of a compensable crime; or

(B) Payment of the deductible amount on a residential insurance policy;

(II) Any modification to the victim's residence that is necessary to ensure victim safety; and

(III) The rekeying of a motor vehicle or other lock that is necessary to ensure the victim's safety.

Compensable losses do not include

(a) Pain and suffering or property damage other than residential property damage or rekeying a lock pursuant to subparagraph (III) of paragraph (a) of subsection (1.5) of this section; or

(b) Aggregate damages to the victim or to the dependents of a victim exceeding thirty thousand dollars.

10

§ 24-4.1-109(2).

¶ 19    Additionally, if a crime victim compensation board provides assistance to a victim, "the amount of assistance provided and requested by the crime victim compensation board is presumed to be a direct result of the defendant's criminal conduct and must be considered by the court in determining the amount of restitution ordered." § 18-1.3-603(10)(a).  The amount of assistance provided may be established by either (1) a list of the amount of money paid to each provider; or (2) a summary data reflecting what total payments were made for medical and dental expenses, funeral or burial expenses, mental health counseling, wage or support losses, or other expenses, if the identity or location would pose a threat to the safety or welfare of the victim.  § 18-1.3-603(10)(b)(II).

¶ 20    The restitution statute also furthers a second interest — that of avoiding double recovery.  As pertinent here, a trial court may decrease a restitution award if the defendant has otherwise compensated the victim or victims for "the pecuniary losses suffered."[4]  § 18-1.3-603(3)(b)(II).  Indeed, "[a]ny amount paid to a

_____

[4] The General Assembly has defined restitution as

11

victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by such victim in any federal or state civil proceeding." § 18-1.3-603(6); *People v. Maxich*, 971 P.2d 268, 269 (Colo. App. 1998); *see also* § 18-1.3-603(8)(c)(I) (a court may not award restitution to a victim concerning a pecuniary loss for which the victim has received or is entitled to receive benefits or reimbursement under a policy of insurance or other indemnity agreement).

¶ 21     When a victim receives compensation from a civil settlement against a defendant, the defendant may request a setoff against

---

> any pecuniary loss suffered by a victim and includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, money advanced by a governmental agency for a service animal, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money. "Restitution" does not include damages for physical or mental pain and suffering, loss of consortium, loss of enjoyment of life, loss of future earnings, or punitive damages.

§ 18-1.3-602(3)(a), C.R.S. 2016.

restitution "to the extent of any money actually paid to the victim for the same damages." *Lassek*, 122 P.3d at 1034. Moreover, "[w]here a civil claim precedes the restitution proceeding, the court must first determine the total amount of the victim's pecuniary damages subject to restitution and then subtract 'any proceeds attributable to those damages received by the victim' from the civil claim." *Id.* at 1034-35 (quoting *People v. Acosta*, 860 P.2d 1376, 1382 (Colo. App. 1993)).

¶ 22 Still, for purposes of a setoff, the court cannot allocate proceeds from an unapportioned civil settlement agreement without "specific evidence that the settlement included particular categories of loss." *Lassek*, 122 P.3d at 1035. This is so because, in civil cases, victims may recover both pecuniary losses covered by the restitution statute and other damages specifically excluded under the restitution statute, such as loss of future earnings and nonresidential property damages, as well as nonpecuniary damages for pain and suffering, inconvenience, or impairment of the quality of life. *See id.*; *see also* § 13-21-102.5, C.R.S. 2016; § 18-1.3-602(3)(a); § 24-4.1-109(2).

¶ 23 When applying a setoff, the trial court must make specific findings on the apportionment of actual damages for which the defendant compensated the victim and set off that amount against any restitution ordered. *T.R.*, 860 P.2d at 564. Thus, in the absence of evidence demonstrating that a civil settlement was intended to be allocated in a particular way, a trial court need not set off any amounts from that settlement against the ordered restitution. *Lassek*, 122 P.3d at 1035.

## C. Application

¶ 24 We begin with *T.R.* and *Lassek*, which we find informative but distinguishable from this case. In *T.R.*, the victim's estate and surviving spouse brought a civil action against T.R. that was defended by T.R.'s automobile liability insurer. *T.R.*, 860 P.2d at 564. The parties reached a settlement for the policy limit of $100,000 in exchange for a waiver of any further claims against T.R. *Id.* The settlement agreement did not designate the proceeds as being for any particular purpose. *Id.* Even so, the juvenile court apportioned some of the settlement proceeds to expenses incurred by the victim's estate as a restitution setoff. *Id.* A division of this court reversed T.R.'s convictions on unrelated grounds and

14

instructed that if restitution were to arise on remand, the trial court should "make specific findings on the apportionment of actual damages that the victim's estate was compensated for under the civil settlement agreement and to set off that amount against any restitution ordered." *Id.*

¶ 25    Similarly, in *Lassek,* the defendant pleaded guilty to charges related to a fatal traffic accident. *Lassek,* 122 P.3d at 1031. The trial court ordered restitution that included costs for burial expenses and travel and lodging expenses incurred by the victim's parents in attending the memorial service. *Id.* at 1034. Lassek sought a $50,000 setoff against restitution based on a settlement payment made by his automobile insurer to the victim's family as part of a "Covenant Not to Execute" signed by the victim's parents. *Id.* at 1035. But the Covenant "did not identify any particular losses covered by the payment." *Id.*

¶ 26    The trial court concluded it could not make a setoff because it could not determine the amount of the settlement proceeds which compensated the parents for the burial and travel expenses. *Id.* A division of this court affirmed the trial court's order, ruling the settlement proceeds "unapportioned" because the Covenant did not

15

identify any expenses covered by the restitution order. *Id.* It further concluded that the defendant bore the burden of establishing apportionment. *Id.*

¶ 27    In contrast to both of these cases, where the settlement agreements did not identify particular categories of losses, the plain language of the Release identifies "*any and every claim, demand, right or cause of action . . . any and all personal injuries and consequences thereof . . . any loss of services . . . and any and all property damage resulting or to result from an accident*" as encompassed within the settlement. (Emphasis added.) A settlement agreement is a contract. *See H. W. Houston Constr. Co. v. Dist. Court*, 632 P.2d 563, 565 (Colo. 1981). The primary goal of contract interpretation is to give effect to the intent of the parties. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). We discern the parties' intent by looking to the plain and generally accepted meaning of the contractual language. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). The meaning of a contract is found by examining the entire instrument and not by viewing clauses or phrases in isolation. *Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 9.

¶ 28 We conclude, therefore, that "personal injuries and the consequences thereof" include both physical and emotional harm arising from the costs of treatment for bodily injury (here, medical expenses for the victim's injuries), and also from the several types of nonpecuniary damages recoverable by the victim in a civil claim based on those physical injuries, such as pain and suffering, inconvenience, and emotional distress. *See Lassek*, 122 P.3d at 1035. Similarly, we conclude that "loss of services" includes the lost wages compensated by the CVCP. For these reasons, we agree with the trial court that Stanley met his burden of going forward with evidence that the Release identified "particular losses covered by the [CVCP] payment." *Id.*

¶ 29 This conclusion does not end our analysis, however, because as argued by the prosecution, and as recognized by the division in *Lassek*, the victim "could allocate the entire settlement to noneconomic [i.e. noncompensable] damages." *Id.* Indeed, the language "any and every claim, demand, right or cause of action" and "property damage" is broad enough to include noncompensable losses, such as automobile damage, and pain and suffering related to the victim's physical injuries.

17

¶ 30    How then does a trial court give effect to § 18-1.3-603(3)(II) and the underlying policy of preventing double recovery expressed in § 18-1.3-603(6) while simultaneously giving effect to the statute's policy of making the victim whole?  None of our cases has answered this question.

¶ 31    We are guided by a related statute from the Colorado Crime Victim Compensation Act (Act).[5]  Section 24-4.1-110 of this Act, titled "Recovery from collateral source," provides as follows:

> (1) The board shall deduct from compensation it awards under this part 1 any payments received by the applicant from the offender or from a person on behalf of the offender, from the United States or any state, or any subdivision or agency thereof, from a private source, or from an emergency award under this part 1 for injury or death compensable under this part 1, excluding death or pension benefits.
>
> (2) If compensation is awarded under this part 1 and the person receiving it also receives a collateral sum under subsection (1) of this section which has not been deducted from it, he shall refund to the board the lesser of

---

[5] Similar to the restitution statute, the General Assembly intended this Act "to provide protection and assistance to victims and members of the immediate families of such victims by declaring and implementing the rights of such persons and by lessening the financial burden placed upon such victims due to the commission of crimes."  § 24-4.1-101, C.R.S. 2016.

the sums or the amount of compensation paid to him under this part 1 unless the aggregate of both sums does not exceed his losses. The fund shall be the payor of last resort.

(3) If a defendant is ordered to pay restitution under article 18.5 of title 16, C.R.S., to a person who has received compensation awarded under this part 1, an amount equal to the compensation awarded shall be transmitted from such restitution to the board for allocation to the fund.

¶ 32　　As relevant here, under subsection (1), if the board knows about a collateral payment to the victim for a compensable damage, it must deduct that amount before issuing its award. Subsection (2) requires a person compensated by the CVCP (the victim here) to refund the CVCP for compensation paid to that person by the offender or by another on behalf of the offender. That is, if the victim receives a "collateral sum" after the award has already been made by the board, then the victim must refund any duplicative amounts, which necessarily could only be compensable damages.

¶ 33　　In order to calculate the amount of any refund owed, a victim would necessarily need to determine whether the compensation he or she received from the defendant was used to reimburse the same

19

losses and expenses compensated by the CVCP and then to provide such information to the CVCP. Our General Assembly has deemed this information "confidential" under § 24-4.1-107.5, C.R.S. 2016, and, therefore, inaccessible to a defendant except in a narrow circumstance not applicable here.[6]

¶ 34    Because the information needed to determine whether the victim has been fully compensated or has received any double recovery is known only by the victim, we conclude that once a defendant has shown that a civil settlement includes the same categories of losses or expenses as compensated by the CVCP and awarded as restitution, the defendant has met his or her burden of going forward, and the prosecution may then rebut the inference that a double recovery has occurred. The prosecution can do so by showing that the victim used or allocated the settlement proceeds for losses proximately caused by the defendant's criminal conduct but which were not paid by the CVCP and covered by the restitution order. In sum, we affirm the trial court's finding that Stanley met

---

[6] Under § 24-4.1-107.5(3), C.R.S. 2016, a defendant may request an in camera review to rebut the presumption of causation, but only based on a defendant's proffer of a nonspeculative evidentiary hypothesis.

his burden of proving a setoff and remand for further proceedings to allow the prosecution to show that the victim did not receive a double recovery from the insurance settlement proceeds and the CVCP payment. The trial court should adjust the restitution order in accordance with that additional evidence, subject to further appeal by either party.

¶ 35 Finally, because of our disposition, we need not address whether the CVCP properly considered the insurance settlement when compensating the victim for medical expenses and lost wages.

### III.  Conclusion

¶ 36 The order is affirmed and the case is remanded for further proceedings consistent with this opinion.

JUDGE BOORAS concurs.

JUDGE WEBB specially concurs.

JUDGE WEBB, specially concurring.

¶ 37    While I agree with the majority's disposition, I write separately to air the possibility of a legislative solution.

¶ 38    On the one hand, a trial court may decrease a restitution award if a defendant has otherwise compensated a victim for the "pecuniary losses suffered." § 18-1.3-603(3)(b)(II), C.R.S. 2016. But on the other, this phrase does not restrict the decrease based on overlap between that compensation and either losses compensable under the restitution statute or any specific item in the restitution award. Indeed, while section 18-1.3-603(6) applies to a setoff against a post-restitution civil judgment rather than against a restitution award, it too does not require any overlap between the items covered by a restitution award and the items "recovered as compensatory damages." The breadth of the latter section could have significant consequences if the civil judgment included only noneconomic losses, such as pain and suffering, for which the restitution award could not have compensated the victim.

¶ 39    At the restitution hearing in this case, the trial court found, "You'll never see a release that says X number of dollars goes to paying the Kaiser bill and X number of dollars goes to paying Auto

22

Nation for repairs nor will you see this is earmarked for or designated for medical expenses." This finding raises the dilemma that, in many cases, the defendant may be unable to meet even the burden imposed by the majority.

¶ 40    True, the majority avoids this dilemma by focusing on language in the Release that corresponds to the two categories of loss identified by the victim compensation board. But that solution may be unavailable in many cases, just as it was unavailable in *Lassek*. And even here, the question is close because while the release expressly addresses "services," it is silent as to "medical expenses."[1]

¶ 41    To avoid further uncertainty, the General Assembly may wish to consider amending section 18-1.3-603(3)(b)(II) to clarify exactly what must be proven, and by whom, to invoke the trial court's discretion to order a setoff under section 18-1.3-603(3), where a civil settlement predates a restitution hearing.

---

[1] This dilemma may be unique to settlements, because if a victim recovers a civil judgment, the jury may have apportioned damages among categories such as economic and noneconomic loss.