24CA1219 Peo v Teague 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1219
Boulder County District Court No. 23CR827
Honorable Thomas F. Mulvahill, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Aiesha Amjed Teague,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE TAUBMAN*
Lipinsky and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General,
Denver, Colorado, for Plaintiff-Appellee

William Peters, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Aiesha Amjed Teague, appeals the trial court's order that she could not set off against the restitution award entered against her in this criminal case when she paid the victim $95,000 under a settlement in a civil action.  We affirm.

## I.     Background

¶ 2     Teague worked as a bookkeeper at Ripple Frozen Yogurt (Ripple), a business in Boulder.  She was accused of stealing $115,562.30 from Ripple over a period of ten years.  She was ultimately charged with theft, identity theft, and forgery.  Teague pleaded guilty to one count of theft, and the remaining charges were dismissed.  The court later ordered her on December 4, 2023, to pay $95,000 in restitution.

¶ 3     Ripple had also filed a civil suit against Teague in 2023.  The parties resolved the case and entered into a settlement agreement on January 15, 2024 — two months before Teague's sentencing in the criminal case.  The agreement provided that Teague would pay Ripple a total of $350,000 as follows: (1) an initial payment of $75,000 no later than seven days after the effective date of the agreement; (2) an annual payment of $25,000 no later than 365 days after the effective date of the agreement; and (3) $1,500

monthly payments until Ripple has received the remaining $250,000, with payments beginning on the third business day after the effective date of the agreement.

¶ 4 Significantly, the settlement agreement did not mention the restitution award or how Teague's payments would be apportioned. It did not say that any of Teague's settlement payments would be applied toward the amount of restitution the court ordered her to pay Ripple in the criminal case.

¶ 5 On January 16, 2024, Teague mailed a $95,000 check to Ripple. This was Teague's first payment to Ripple after the settlement agreement became effective, and before restitution was ordered. The memo line of the check referred to "Teague settlement" and did not mention "restitution." In the accompanying cover letter to Ripple's civil counsel, Teague's civil counsel wrote, "Enclosed please find a settlement check for $95,000." The letter said nothing about restitution.

¶ 6 Teague's and Ripple's civil attorneys subsequently exchanged emails regarding whether the $95,000 payment satisfied Teague's restitution obligation. Teague's civil attorney asked Ripple's civil attorney to "confirm[] whether . . . Teague paid the entire amount of

restitution." Ripple's civil attorney said the $95,000 payment was "consistent with . . . Teague's negotiations with the DA's office." However, he did not say that the $95,000 should be applied toward Teague's restitution obligation.

¶ 7    Teague and her civil attorney took the position that the parties had "agreed that the settlement payment would be treated as 'restitution,'" and the presentence investigation report noted Teague's statement that she planned to pay "restitution in full before sentencing." The court conducted Teague's sentencing hearing on March 29, 2024, and April 29, 2024.

¶ 8    On the first day of the sentencing hearing, the trial court asked the prosecution about Teague's statement in the presentence investigation report that restitution would be paid in full before sentencing. The prosecution denied that Teague had paid restitution in full with the $95,000 payment because she owed Ripple an initial settlement payment of $75,000 "anyway" and the burden was on the defense "to show how the costs are attributable and the setoff." Defense counsel argued that "the restitution in this case was to be subsumed in [the settlement agreement], meaning as

long as she paid $95,000 in restitution[,] . . . it would satisfy the damages provision in the civil case."

¶ 9 The trial court issued a written order concluding that Teague had met her burden "of showing that the settlement agreement is clearly intended to cover all categories of loss for which restitution could be imposed." The trial court also found that the prosecution had "not yet rebutted the inference of double recovery" and said that it could rebut the inference if it presented evidence on this issue at the April 29 continued sentencing hearing.

¶ 10 At that hearing, Ripple's civil attorney testified that the $95,000 payment and the additional payments that Ripple had received from Teague had been apportioned to attorney fees, disgorgement of Teague's compensation, court costs, and prejudgment interest. He further testified that no funds received from Teague had been apportioned to the $114,425 in actual damages attributable to Teague's actions.[1] During cross-examination, Ripple's civil attorney confirmed that the settlement agreement required an initial payment of $75,000 within seven days

---

[1] Although accused of stealing $115,562.30, Teague confessed to a judgment that included $114,425 in actual damages.

of the settlement agreement's effective date. He also confirmed that the settlement agreement did not address how Teague's settlement payments were to be apportioned.

¶ 11 Teague's civil attorney then testified that it was both parties' understanding that "the money that was paid in the settlement agreement would be applied to the restitution with the [c]ourt." He also disagreed with the prosecution that Ripple could apportion the money it had received, arguing that the agreement stated the amount and timing of the payments. The prosecution then stated that the settlement agreement "simply says on what days and how much the payments are to be," and Teague's civil attorney agreed.

¶ 12 The court found that Teague was not entitled to a setoff because "of the amount that's been paid by [Teague], none of that has been used by the victim or applied to cover actual damages."

¶ 13 Teague now appeals.

## II.  Analysis

¶ 14 Teague contends that the trial court erred in concluding that she was not entitled to a setoff after paying Ripple $95,000. She asserts that the trial court did not properly apply contract interpretation rules to the settlement agreement. More specifically,

she contends that because the settlement agreement was ambiguous, extrinsic evidence was admissible to determine the parties' intent. She also asserts that extrinsic evidence proved the parties' intent that restitution was addressed in the settlement agreement. We are not convinced.

### A. Standard of Review and Applicable Law

¶ 15 Restitution in criminal cases is "'a mechanism for the rehabilitation of offenders,' 'a deterrent to future criminality,' and a means 'to lessen the financial burdens inflicted upon [victims and their immediate families], to compensate them for their suffering and hardship, and to preserve the individual dignity of victims.'" *People v. Lassek*, 122 P.3d 1029, 1034 (Colo. App. 2005) (alteration in original) (quoting § 18-1.3-601(1)(c)-(e), C.R.S. 2025), *overruled on other grounds by*, *Sullivan v. People*, 2020 CO 58, ¶ 18, 465 P.3d 25, 30. Restitution can be decreased "[i]f the defendant has otherwise compensated the victim or victims for the pecuniary losses suffered." § 18-1.3-603(3)(b)(II), C.R.S. 2025. Also, "[a]ny amount paid to a victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by

such victim in any federal or state civil proceeding." § 18-1.3-603(6).

¶ 16     We review a trial court's restitution award for an abuse of discretion. *People v. Gregory*, 2019 COA 184, ¶ 21, 469 P.3d 507, 511. "A trial court abuses its discretion when it misconstrues or misapplies the law, or when its decision fixing the amount of restitution is not supported by the record . . . ." *Id.* (citation omitted).

¶ 17     "A settlement agreement is a contract." *People v. Stanley*, 2017 COA 121, ¶ 27, 405 P.3d 518, 524. To determine the parties' intent, we look to the "plain and generally accepted meaning of the contractual language." *Id.* If the contractual language is unambiguous, the "document cannot be explained by extrinsic evidence so as to dispute its plain meaning." *Denv. Found. v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1126 (Colo. 2007). Extrinsic evidence is "only admissible to prove intent when there is an ambiguity in the terms of the contract." *Gagne v. Gagne*, 2014 COA 127, ¶ 52, 338 P.3d 1152, 1163. "We review and interpret . . . contracts de novo." *Gregory*, ¶ 22, 469 P.3d at 511.

## B. Ambiguity and Merger Clause

¶ 18 Teague contends that the settlement agreement is ambiguous because it is "silent as to the apportionment of any payments." She maintains that the prosecution and Ripple interpreted the silence as Ripple's "right to apportion any payment as [it] saw fit," while defense counsel asserted that the $95,000 payment "had been agreed to be applied to the criminal restitution order."

¶ 19 We agree with the People that silence usually does not create ambiguity in a contract. *Pub. Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006). However, "[s]ilence does create ambiguity . . . when it involves a matter naturally within the scope of the contract." *Id.* (quoting *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993)).

¶ 20 The scope of the settlement agreement at issue here outlined the amount of money owed in each listed category (e.g., damages, reasonable attorney fees, recoverable costs), indicated when payments were due, and explained how payments were to be received. It did not address whether any of the payments were to be applied to Teague's restitution obligation to Ripple. Also, Teague's civil attorney confirmed as much in his testimony at the April 29

8

sentencing hearing when the prosecution asked him, "So . . . the settlement agreement . . . simply says on what days and how much the payments are to be?" and he responded in the affirmative. If the parties had intended to address in the settlement agreement the apportionment of Teague's payments toward her restitution obligation, they could have specified in the agreement whether Teague would satisfy her restitution obligation by making her settlement payments.

¶ 21    We also conclude that the merger clause in Section 5.0 of the settlement agreement defeats Teague's contention. A merger clause in an unambiguous contract prohibits the use of extrinsic evidence to prove the parties' intent. *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995). "Therefore, the terms of a contract intended to represent a final and complete integration of the agreement between the parties are enforceable, and extrinsic evidence offered to prove the existence of prior agreements is inadmissible." *Id.*

¶ 22    Section 5.0 of the settlement agreement stated, "This agreement constitutes the complete, final, and entire agreement between the Parties and supersedes all prior written or oral negotiations, representations, or agreements between the Parties

relating in any way to the subject matter of this Agreement." While Teague relies on the civil attorneys' discussions above detailing whether her $95,000 settlement payment to Ripple should be applied to her restitution obligation, this evidence is also precluded by the merger clause.

¶ 23 Because the settlement agreement is unambiguous and includes a clear merger clause, the trial court did not err by interpreting its plain language.[2]

### C. Setoff

¶ 24 "[A] defendant is entitled to a setoff against [a] restitution order for any money actually paid to the victim for the same damages covered by the order." *Gregory*, ¶ 24, 469 P.3d at 512. When a civil claim precedes a restitution order, "the court must first determine the total amount of the victim's pecuniary damages subject to restitution and then subtract 'any proceeds attributable to those

---

[2] Teague also argued that "the only" evidence of Ripple's intent as to the apportionment was Ripple's civil attorney's testimony that Ripple had the right to apportion money as it saw fit, and therefore the trial court's finding was not supported by sufficient evidence. This extrinsic evidence is inadmissible because a party cannot vary an unambiguous contract through such evidence, so we will not address this argument.

damages received by the victim' from the civil claim." *Id.* (citation omitted). If the trial court finds that there is insufficient evidence "on the apportionment of actual damages for which the defendant compensated the victim," the defendant is not entitled to a setoff. *Stanley*, ¶ 23, 405 P.3d at 524.

¶ 25  A defendant claiming entitlement to a setoff has the burden of showing that "a civil settlement includes the same categories of losses or expenses . . . awarded as restitution." *Id.* at ¶ 34, 405 P.3d at 526. Once the defendant has met that burden, the prosecution can "rebut the inference that a double recovery has occurred" by showing that the victim used or allocated the proceeds in a way that is not "covered by the restitution order." *Id.*

¶ 26  Teague argues that "[Ripple] cannot simultaneously claim the same theft caused $95,000 in restitution as well as $114,425 in damages because the law is designed to prevent unjust enrichment." We agree.

¶ 27  Section 18-1.3-603(6) is designed to prevent double recovery in that restitution can be set off "against any amount later recovered as compensatory damages by [the] victim in any federal or state civil proceeding." The damages category in the settlement

agreement compensates Ripple for its economic loss. The restitution order covers the same type of pecuniary loss. Therefore, Teague met her burden.

¶ 28 However, the prosecution also met its burden and rebutted the inference of double recovery through Ripple's civil attorney's testimony and the settlement agreement's unambiguous language. The civil attorney testified that Ripple had apportioned the settlement payments that Teague had made thus far to attorney fees, disgorgement of Teague's compensation, court costs, and prejudgment interest. The prosecution asked Ripple's civil attorney, "And then $114,425 is the amount of actual damages, and no payment has been attributed to that; is that correct?" Ripple's civil attorney replied, "That's correct."

¶ 29 Therefore, the trial court did not err in finding that Teague's $95,000 settlement payment did not reduce her restitution obligation to Ripple because, under the settlement agreement, Ripple was not required to apply any portion of that payment to the amount of restitution the court ordered Teague to pay Ripple. Accordingly, no double recovery occurred.

### III.  Disposition

¶ 30    The restitution order is affirmed.

JUDGE LIPINSKY and JUDGE BERGER concur.