The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 19, 2019

## 2019COA184

**No. 16CA1171, *People v. Gregory* — Criminal Law — Sentencing
— Restitution**

As a matter of first impression, a division of the court of
appeals holds that where the victims' families enter into a
settlement agreement with defendant and his insurer that is clearly
intended to cover all liabilities and that agrees to indemnify
defendant for anything additional he has to pay, defendant has met
his burden of going forward to show that the agreement covered all
categories of loss for which restitution could be imposed. The
division also concludes — as a matter of first impression — that the
court's authority to decrease restitution does not carry with it the
same limitations placed on its authority to increase restitution
previously ordered.

COLORADO COURT OF APPEALS                                    2019COA184

Court of Appeals No. 16CA1171
El Paso County District Court No. 15CR2254
Honorable G. David Miller, Judge

The People of the State of Colorado,

Plaintiff-Appellee and Cross-Appellant,

v.

Marshal Douglas Gregory,

Defendant-Appellant and Cross-Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUSTICE MARTINEZ*
Berger and Welling, JJ., concur

Announced December 19, 2019

Philip J. Weiser, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado; Daniel H. May, District Attorney, Tanya A. Karimi, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff-Appellee and Cross-Appellant

Megan A. Ring, Colorado State Public Defender, Lisa Weisz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1 Defendant, Marshal Douglas Gregory, and the People each appeal the restitution order entered by the district court. We decide that the court's authority to decrease restitution does not carry with it the same limitations placed on its authority to increase restitution previously ordered. We also conclude that the comprehensive settlement agreement in this case — which was intended to cover all liabilities and indemnified defendant for any further losses — meets defendant's burden of going forward to show that he compensated the victims for the same categories of losses for which restitution could be imposed. Thus, we reverse and remand for further proceedings.

## I. Background

¶ 2 In September 2014, defendant, who was seventeen years old at the time, drove while intoxicated and crashed his vehicle, killing two passengers (B.B. and R.P.) and seriously injuring a third (J.C.). Defendant pleaded guilty, as an adult, to two counts of vehicular homicide. On October 11, 2015, defendant's insurance company settled with the two deceased victims' families and the living victim. Each of the deceased victims' families received $500,000 and, in

exchange, released defendant, his parents, and his insurance company from all claims stemming from the incident.

¶ 3    On October 16, 2015, the court sentenced defendant to a twelve-year suspended prison sentence, conditioned on completion of four years in the Youthful Offender System. During sentencing, the court reserved restitution for ninety-one days. On January 6, 2016, the prosecution requested restitution of $15,513.43. The requested restitution consisted of (1) $3307.33 to R.P.'s family for travel expenses and psychologist fees for R.P.'s brother; and (2) $5542 and $6664.10 to the Crime Victim Compensation Program (CVCP) for payments made to B.B.'s and R.P.'s families, respectively, for funeral expenses.

¶ 4    On May 27, 2016, following a restitution hearing, the court entered a restitution order for the entire amount requested by the prosecution. The order stated that defendant had thirty days to object to the amount of restitution before the order became final. Defendant filed an objection on June 8, 2016 — within the allotted thirty days — arguing that the court should "reconsider" its order. The court issued an amended restitution order on July 11, 2016, in which it removed the payment that was to be made directly to R.P.'s

family, reasoning that it was set off by the settlement agreement. The court maintained that defendant was liable to the CVCP, as the fund was not a party to the settlement agreements.

¶ 5        Defendant now appeals the amended restitution order, arguing that the court erred by denying him a setoff for the CVCP payments. The People filed a cross-appeal in which they argue that (1) the court did not have authority to change its May 27, 2016, restitution order; and (2) the court erred by granting defendant a setoff for the payment to R.P.'s family.

II.        The Court's Authority to Amend the Restitution Order

¶ 6        As a threshold matter, the People contend that the district court did not have authority to change its May 27, 2016, order.  We disagree.

A.        Applicable Law

¶ 7        We review and interpret statutes de novo.  *People v. Padilla-Lopez*, 2012 CO 49, ¶ 7.  When construing statutes, we aim to ascertain and give effect to the intent of the General Assembly.  *Id.*  We accord words and phrases their plain and ordinary meanings. *Id.*  "Where the language is clear, it is not necessary to resort to

other tools of statutory construction." *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 7.

¶ 8    The district court must consider restitution in every order of conviction it enters in a felony case. § 18-1.3-603(1), C.R.S. 2019. Pursuant to section 18-1.3-603(1), an order of conviction must contain: (a) an order specifying the amount of restitution; (b) an order that the defendant must pay restitution but that the specific amount is to be determined within ninety-one days from the order of conviction, or longer for good cause; (c) an order, in addition to a specific amount of restitution, that the defendant cover the cost of a victim's specific future treatment; or (d) a finding that no victim of the crime suffered a pecuniary loss and that restitution is not required. § 18-1.3-603(1).

¶ 9    Section 18-1.3-603(3) also states:

>    Any order for restitution may be:
>
>    (a) Increased if additional victims or additional losses not known to the judge or the prosecutor at the time the order of restitution was entered are later discovered and the final amount of restitution due has not been set by the court; or
>
>    (b) Decreased:

(I) With the consent of the prosecuting attorney and the victim or victims to whom the restitution is owed; or

(II) If the defendant has otherwise compensated the victim or victims for the pecuniary losses suffered.

## B. Analysis

¶ 10 The People contend that the court lacked statutory authority to decrease the restitution amount ordered on May 27, 2016, as section 18-1.3-603(3)(b)(II) only allows a decrease in the amount of restitution if the defendant has compensated the victims *after* the court's order is entered. The People reiterate that the court was aware of the settlement agreements when it entered its May 27, 2016, order, so no new information was available to it when it changed the order.

¶ 11 We do not read section 18-1.3-603(3)(b)(II) as imposing such a limitation. Unlike section 18-1.3-603(3)(a), which allows a court to increase restitution only if additional losses were "not known to the judge or the prosecutor at the time the order of restitution was entered" and are discovered before the "final amount of restitution" has been set by the court, section 18-1.3-603(3)(b)(II) does not

5

similarly limit when the court can decrease the restitution amount. *See* § 18-1.3-603(3)(a)-(b). Instead, section 18-1.3-603(3)(b)(II) merely states that the restitution amount may be decreased if the defendant has "otherwise compensated the victim or victims for the pecuniary losses suffered." We therefore conclude that the court had authority to decrease the restitution amount ordered on May 27, 2016, when it finally determined that R.P.'s family was compensated by the settlement agreement. *See Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007) ("We do not add words to the statute or subtract words from it.").

¶ 12    In so concluding, we reject the People's contention that because restitution is part of a defendant's criminal sentence, amendment of a final restitution amount violates the constitutional prohibition against double jeopardy. The cases cited by the People illustrate that this constitutional protection applies only to an *increase* in the restitution amount. A *decrease* in the restitution amount does not have the same implication. *See People v. Harman*, 97 P.3d 290, 293 (Colo. App. 2004) (highlighting that the double jeopardy prohibition against increasing a legal sentence once the

defendant has begun serving it is to protect the defendant from being punished twice for the same offense).

¶ 13    We also reject the People's contention that our decision contravenes the Colorado Supreme Court's decision in *Meza v. People*, 2018 CO 23. There, the county court entered a specific amount of restitution, reserved restitution at the same time, and then later increased the amount of restitution. *Meza*, ¶ 6. Our supreme court held that the county court erred because it did not have statutory authority pursuant to section 18-1.3-603(3)(a) to enter a specific amount of restitution, reserve restitution at the same time, and subsequently increase restitution. *Id.* at ¶ 15. The court in this case, however, did not err because it had statutory authority to decrease the restitution amount pursuant to section 18-1.3-603(3)(b)(II).

¶ 14    We therefore conclude that the district court had authority to amend the May 27, 2016, restitution order.[1]

_____

[1] We note that the May 27, 2016, order may not have been an order setting the amount of restitution because it specifically provided that it would result in a "final order" if the defendant did not request a hearing within 30 days. Because the district court has authority to decrease the amount of restitution, it is unnecessary

7

### III. The Settlement Agreements

¶ 15    The People next contend that the district court erred by granting defendant a setoff for R.P.'s family's travel expenses and psychologist fees based on the settlement agreement between defendant's insurer and R.P.'s family. Defendant, on the other hand, contends that the court erred by denying him a setoff for the CVCP payments made to the victims' families for funeral expenses because the agreements discharged his liability for these costs.

¶ 16    We agree that defendant showed that the settlement agreement covered R.P.'s family's travel expenses and psychologist fees but conclude that the district court erred by not considering that the settlement agreements also covered the CVCP payments made to the victims' families for funeral expenses. Because defendant has met his burden of going forward by showing that the settlement agreements were intended to cover the same categories of losses as his restitution, the burden now shifts to the prosecution to rebut the inference of double recovery. Thus, we reverse and remand for further proceedings.

---

for us to resolve any ambiguity about the nature of the May 27, 2016, order.

## A. Additional Facts

¶ 17 The settlement agreements between defendant's insurer and the deceased victims' families were broad and comprehensive. The agreements signed by the two families were practically identical. Both agreements stated in relevant part:

> In consideration of the payment set forth . . . Releasors [victim's parents and estate] . . . completely release and forever discharge Releasees [defendant and his parents], and their insurers . . . from any and all actions, causes of actions, suits, debts, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, and expenses, of any nature whatsoever, in law or equity, whether known or unknown, from the beginning of time through the execution of this agreement, including without limitation all claims which were or could have been asserted in the Action, that related in any way to the automotive accident occurring on or about September 1, 2014, and the resulting death of [victim].

¶ 18 The agreements also contained a separate section titled "Responsibility for Liens, Interests, and Any Other Claims." The section stated in relevant part:

> Releasors agree that they are solely responsible for the payment of any and all applicable medical and other liens, interests or claims that may exist or may be asserted in the future, and that the Releasees shall not be

> liable or responsible for any liens asserted for claims, injuries, or damages arising from the accident occurring on or about September 1, 2014, and resulting in wrongful death of [victim]. . . .
>
> The indemnity in this section shall include, but not be limited to, . . . governmental or non-governmental liens, [and] amounts paid to or on behalf of Releasors by . . . any governmental program or agency . . . .

¶ 19    At the restitution hearing, the district court relied on *People v. Lassek*, 122 P.3d 1029 (Colo. App. 2005), and initially concluded that because the agreements were unapportioned, the court could not ascertain the categories of loss that were covered. The court reasoned that "[i]t could be all pain and suffering." The court therefore refused to set off R.P.'s family's travel expenses and psychologist fees. As for the CVCP payments, the court concluded that the CVCP's interest could not be waived by the settlement agreements as the CVCP was not a party to them. The court therefore ordered all of the restitution requested by the prosecution, subject to defendant's request for a second hearing.

¶ 20    In its subsequent order, the court distinguished the agreement in *Lassek* from the agreements in this case.[2]  The court reasoned that the *Lassek* agreement was executed with the knowledge that the victims were bringing a separate underinsured motorist claim against their own insurer.  The court explained that the *Lassek* agreement therefore had to be apportioned to set off the defendant's restitution as it was not intended to be a full settlement because a jury had yet to determine the extent of the victim's damages.  The court noted that the agreements in this case clearly did not contemplate further legal action and expressed the intent of the parties to discharge defendant of all possible claims against him so that "an itemized statement of damages would serve no purpose in this case."  The court therefore concluded that defendant was not liable to R.P.'s family for any further expenses.  The court did not alter its ruling on the CVCP payments.

---

[2] The order refers to "*People v. Lassiter*, 122 P.3d 1029 (Colo. App. 2005)," however, this appears to be an error and is assumed to be *People v. Lassek*, 122 P.3d 1029 (Colo. App. 2005).

## B. Discussion

¶ 21 We review a trial court's restitution award for an abuse of discretion. *People v. Sieck*, 2014 COA 23, ¶ 5. A trial court abuses its discretion when it misconstrues or misapplies the law, *id.*, or when its decision fixing the amount of restitution is not supported by the record, *see People v. Rivera*, 968 P.2d 1061, 1068 (Colo. App. 1997). "We will not disturb the district court's determination as to the amount of restitution if it is supported by the record." *People v. Henson*, 2013 COA 36, ¶ 9.

¶ 22 We review and interpret statutes and contracts de novo. *Padilla-Lopez*, ¶ 7; *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).

¶ 23 Restitution is "any pecuniary loss suffered by a victim." § 18-1.3-602(3)(a), C.R.S. 2019. The General Assembly has declared that restitution is designed to rehabilitate offenders, deter future criminality, lessen the financial burdens inflicted on victims and their families, and compensate them for their suffering and hardship. *See* § 18-1.3-601(1)(c)-(e), C.R.S. 2019; *Lassek*, 122 P.3d at 1034.

¶ 24    "The restitution statute also furthers a second interest — that

of avoiding double recovery." *People v. Stanley*, 2017 COA 121,

¶ 20.  "Any amount paid to a victim under an order of restitution

shall be set off against any amount later recovered as compensatory

damages by such victim in any federal or state civil proceeding."

§ 18-1.3-603(6).  Additionally, a victim's civil judgment against a

defendant does not prohibit the trial court from imposing restitution

for the same damages.  *People v. Wright*, 18 P.3d 816, 818 (Colo.

App. 2000), *superseded by statute on other grounds*, Ch. 232,

sec. 1, § 16-18.5-103, 2000 Colo. Sess. Laws 1032, *as recognized in*

*People v. Rockne*, 2012 COA 198, ¶ 12.  However, a defendant is

entitled to a setoff against the restitution order for any money

actually paid to the victim for the same damages covered by the

order.  *Id.*  Therefore, where a civil claim precedes the restitution

proceeding, the court must first determine the total amount of the

victim's pecuniary damages subject to restitution and then subtract

"any proceeds attributable to those damages received by the victim"

from the civil claim.  *People v. Acosta*, 860 P.2d 1376, 1382 (Colo.

App. 1993); *see also People v. T.R.*, 860 P.2d 559, 564 (Colo. App.

1993).

¶ 25    The prosecution bears the burden of proving the amount of restitution owed by a preponderance of the evidence, while the defendant bears the burden of proving any setoff. *People v. Smith*, 181 P.3d 324, 328 (Colo. App. 2007); *Lassek*, 122 P.3d at 1035.

¶ 26    The record here demonstrates that the district court initially thought it lacked the authority to consider whether the settlement agreements could set off defendant's restitution because the agreements were not apportioned. The court summarized its position by stating "it looks like my hands might be tied." Then, when the court considered the broad language of the agreements in its subsequent order, it did not order restitution to R.P.'s family but still refrained from setting off the funeral expenses paid by the CVCP, perhaps as a result of its initial reasoning that the CVCP was not a party to the agreements.

¶ 27    Although the payments under the agreements were not apportioned, they were clearly intended by the parties to compensate the victims for any and all claims that arose as a result of the incident. The plain language of the agreements certainly confirms this intent. The agreements covered "*any and all actions, causes of actions, suits, debts, charges, complaints, claims,*

14

*liabilities, obligations, promises, agreements, controversies, damages,*
*and expenses, of any nature whatsoever, in law or equity, whether*
*known or unknown, from the beginning of time through the execution*
*of this agreement . . . ."* (Emphasis added.) Both agreements also
contained broad indemnification clauses, indemnifying defendant
and his parents against any and all further losses.

¶ 28    Apportionment of a settlement agreement indicates to the
court whether the victim recovered twice for the same pecuniary
loss. That is not to say, however, that an unapportioned agreement
intended to cover all pecuniary losses could not be considered in
assessing whether the defendant is entitled to a setoff. To the
contrary, it seems incongruous to conclude that an agreement
intended to cover every conceivable loss is "unapportioned" and,
therefore, does not set off any loss at all. *See Stanley*, ¶¶ 39-40
(Webb, J., specially concurring) (acknowledging that, in many
cases, the defendant may be unable to meet his burden of proving
that the agreement was intended to cover the same categories of
loss as restitution because most settlement agreements are not
apportioned). A defendant should not be precluded from fully

satisfying the victim's losses prior to the entry of restitution in this manner.

¶ 29 We therefore hold that when a settlement agreement is clearly intended to cover all categories of loss for which restitution could be imposed, the defendant has met his burden of going forward. The inability of the victim to receive further recovery, as evidenced by an indemnification clause, also serves as strong evidence that the victim has agreed to the value of all losses and has already received full recovery. Because the agreements here covered the same losses that could be compensated by restitution, defendant has met his burden of going forward, and the burden shifts to the prosecution so that it may rebut the inference of double recovery. *See id.* at ¶ 34 (majority opinion).

¶ 30 We acknowledge that *Stanley*'s holding was limited to restitution for payments made to the CVCP; however, we find some of the rationale underlying it equally applicable to payments made pursuant to a comprehensive settlement agreement intended to cover all losses, as in this case. We therefore conclude that on remand, the court should allow the prosecution an opportunity to rebut an inference of double recovery for both the award to R.P.'s

family for travel expenses and psychologist fees and the payments made by the CVCP to the victims' families for funeral expenses.

## IV.  *Lassek* and *Stanley*

¶ 31     Contrary to the People's contention, this outcome does not conflict with *Lassek*, as that case is distinguishable from this case. In *Lassek*, the defendant argued that he should receive a setoff for burial and travel expenses based on a "Covenant Not to Execute" that was signed by his insurer and the victim's parents.  *Lassek*, 122 P.3d at 1035.  The trial court denied the setoff on the basis that the agreement was unapportioned such that the court was unable to determine the categories of loss it covered.  *Id.*  A division of this court held that the trial court did not err because the defendant had the burden of proving that he was entitled to a setoff.  *Id.*  The division found no evidence in the record to support the defendant's argument that the unapportioned settlement covered the same pecuniary losses as the restitution order.  *Id.*

¶ 32     Unlike the agreement in *Lassek,* the settlement agreements in this case were clearly intended to cover *all* conceivable claims against defendant and even appear to preclude the victims' families from retaining any additional compensation.  Therefore, there was

17

sufficient evidence in the record to show that the settlement agreements covered the same pecuniary losses as the restitution order.

¶ 33　　We also decline the People's invitation to abandon *Stanley*; instead, we find it instructive in our case.  In *Stanley*, the defendant sought a setoff against a restitution amount of $30,000 that the CVCP had paid to the victim for lost wages and medical expenses. *Stanley*, ¶¶ 2, 7.  The defendant's insurer had settled with the victim for $25,000, which was the policy limit.  *Id.* at ¶ 2.  The agreement covered "any and every claim, demand, right or cause of action," including "personal injuries and consequences thereof" and "any loss of services" resulting from the incident.  *Id.* at ¶ 5.  The division in *Stanley* concluded that the agreement's references to "personal injuries" and "loss of services" were sufficient for the defendant to meet his burden of proving that the agreement was intended to cover lost wages and medical expenses — the same losses covered by his restitution.  *Id.* at ¶ 28.  The division acknowledged that the broad language of the unapportioned agreement hindered the trial court's ability to allocate the settlement to the different categories of loss.  *Id.* at ¶ 29.

Additionally, the confidential nature of CVCP determinations meant that only a victim would know if he or she was fully compensated or received double recovery. *Id.* at ¶ 34. The division therefore held that once a defendant has shown that a settlement includes the same categories of losses compensated by the CVCP and awarded as restitution, the defendant has met his burden of going forward. *Id.* The prosecution may then rebut the inference of double recovery. *Id.*

¶ 34   Although the settlement agreements in this case did not specify the categories of loss covered, the broad language of the agreements reinforces the conclusion that the agreements were intended to cover all conceivable categories of loss. Additionally, the indemnification clauses show that the victims are likely precluded from receiving further compensation. The agreements in this case are sufficient to meet defendant's burden.

¶ 35   Further, because *Stanley* was announced after the restitution hearings in this case, on remand the People should have the opportunity to rebut the inference of double recovery.

## V. The People's Other Contentions

¶ 36    We reject the People's contention that because the CVCP was not a party to the agreements and is not bound by them, defendant is liable for the CVCP payments regardless of whether the agreements covered funeral costs.

¶ 37    The district court may — but is not required to — compensate the CVCP through defendant's restitution. When considering restitution, the court is determining the victims' pecuniary losses that have yet to be compensated by the defendant. *See* § 18-1.3-602(3)(a) (defining "restitution").

¶ 38    Because the agreements satisfied defendant's burden of going forward, if the prosecution is unable to rebut an inference of double recovery, the court should not order any restitution to the CVCP. *See* § 24-4.1-110(2), C.R.S. 2019 (providing that if compensation is awarded by the CVCP and the victim also receives a collateral sum that was not deducted from the CVCP award, the victim shall refund to the CVCP board the lesser of the sums or the amount of compensation paid to him by the CVCP, unless the aggregate of both sums does not exceed his losses).

¶ 39    We are also not persuaded by the People's argument that if defendant does not pay restitution, then the agreements violate public policy because the statutory scheme favors ordering restitution.  We acknowledge that the goals of restitution include rehabilitation and deterrence; however, the statutory scheme clearly contemplates the need to prevent the victim from recovering twice for the same loss.  *See* § 18-1.3-603(6) (giving defendant a setoff for amounts recovered by victim in a civil proceeding); § 18-1.3-603(8)(c)(I) (prohibiting the court from awarding restitution to a victim who is compensated for the same loss by an insurance policy or an indemnity agreement); § 24-4.1-110(1)-(2) (requiring that the CVCP deduct other payments received by the victim from its award).  Additionally, Colorado public policy favors the settlement of disputes.  *Arline v. Am. Family Mut. Ins. Co.*, 2018 COA 82, ¶ 19.

¶ 40    Finally, because of our disposition, we need not address whether the CVCP properly considered the insurance settlements when it compensated the victims for funeral costs.

## VI. Conclusion

¶ 41　　We therefore reverse and remand the case to the district court to give the People an opportunity to rebut the inference of double recovery.

JUDGE BERGER and JUDGE WELLING concur.