24CA0541 Peo v Quezada 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0541
Adams County District Court No. 21CR4108
Honorable Mark D. Warner, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Froilan Quezada,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Hernandez & Associates, P.C., Jonathan R. Booker, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, Froilan Quezada, appeals the district court's restitution order. We affirm.

## I.     Background

¶ 2      Quezada was involved in a head-on collision with a vehicle driven by Samer Kabbara, who is from Lebanon. Kabbara suffered severe injuries, and Quezada's friend and passenger, Raul Villalobos, was killed. Quezada pled guilty to vehicular homicide, third degree assault, and driving while intoxicated. As part of the plea agreement, he agreed to pay restitution.

¶ 3      On April 19, 2023, the district court sentenced Quezada to community corrections for the felony and to county jail for the misdemeanors. The court also entered a preliminary order for restitution, but it granted the prosecution twenty-one days to request a specific amount. Under section 18-1.3-603(1)(b), C.R.S. 2022,[1] the court's preliminary restitution order triggered the ninety-one-day period for the court to impose restitution, unless it found

---

[1] Section 18-1.3-603(1), (1)(b), C.R.S. 2022, was in effect when Quezada was sentenced. Because the statute has since been amended, we refer to the 2022 version throughout this opinion. *See* Ch. 307, sec. 1, § 18-1.3-603(1), (1)(b), 2025 Colo. Sess. Laws 1606.

good cause for extending the deadline. The resulting deadline to impose restitution was July 19, 2023.

¶ 4 On May 3, 2023, the prosecution filed a motion to impose restitution totaling $29,793.90. This request included $3,203.24 for medical bills paid to Mount Lebanon Hospital, $90.66 for medical bills paid to American University of Beirut Medical Center, and an estimated $34,500.00 for a bilateral knee replacement surgery to be performed in Lebanon, offset by $8,000.00 Kabbara received from an insurance settlement.

¶ 5 On May 24, 2023, Quezada objected to the motion for restitution and requested an evidentiary hearing to "be set on a future date to be determined by" the district court.

¶ 6 The court initially set a restitution hearing for June 26, 2023 — twenty-three days before the statutory deadline. Quezada then filed a motion to continue the matter "to a future date," again, "to be determined" by the court. In response, the prosecution requested the court make a finding of good cause for setting the hearing outside the ninety-one-day period required by section 18-1.3-603(1)(b). It further requested the court to find that Quezada had waived his right to have the hearing set within the deadline.

Quezada did not object, and the court set the hearing for August 1, 2023.

¶ 7    Due to a busy docket, the court reset the August 1 hearing to August 25, 2023. At the end of that hearing, the court ordered the parties to file written closing arguments by the end of the following week. Based on complications in the restitution dispute, including the fact that some restitution documents were provided from Lebanon and required currency conversion, the court found "extraordinary circumstances" required additional time so it could review the record closely. It found that an extension of thirty days was necessary before it could "enter any sort of order."

¶ 8    On September 1, 2023, Quezada and the prosecution filed written closing arguments.

¶ 9    The court did not enter any order on the amount of restitution.

¶ 10    On February 7, 2024, the prosecution moved for a determination of restitution so the victim could make an informed decision regarding different treatment options. On February 15, 2024, the court entered a written order imposing the requested amount of $29,793.90.

¶ 11 Quezada appeals, arguing the district court lacked authority to impose restitution beyond the ninety-one-day deadline required by section 18-1.3-603(1)(b). He further argues the court erred by allowing Kabbara double recovery following the insurance settlement and by concluding Kabbara's future knee replacement surgery was recoverable as an actual cost. We disagree with these arguments and affirm.

## II. Timeliness

### A. Standard of Review and Applicable Law

¶ 12 Whether a district court has authority to order a defendant to pay restitution is a legal question that we review de novo. *People v. Weeks*, 2021 CO 75, ¶ 24.

¶ 13 Section 18-1.3-603(1) requires that, with one exception not relevant here, every sentence in a Colorado criminal case must include consideration of restitution. *See Babcock v. People*, 2025 CO 26, ¶ 8. Among the four types of restitution orders a court may enter is one that requires the defendant to pay restitution but "that [provides] the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time

4

period by which the restitution amount shall be determined." § 18-1.3-603(1)(b).

¶ 14 A district court "lack[s] authority" to order restitution when it neither determines the restitution amount within ninety-one days nor finds good cause to extend the deadline. *Weeks*, ¶¶ 5, 45. However, when a defendant's conduct manifests an intent to relinquish the statutory right to have a restitution amount ordered within ninety-one days of sentencing, he waives any claim that the restitution order must be vacated. *See People v. Roberson*, 2025 CO 30, ¶¶ 14, 17.

## B. Discussion

¶ 15 Quezada asserts the district court lacked authority to order restitution because he did not waive his statutory rights, and the court's order was issued 174 days after the restitution hearing, when the court found good cause to extend its deadline by only thirty days. We conclude this argument is waived.

¶ 16 As discussed, the district court sentenced Quezada and entered a preliminary restitution order on April 19, 2023. Therefore, it had until July 19 — ninety-one days later — to determine the restitution amount, unless it found good cause for an

5

extension.  When Quezada initially objected to the amount requested by the prosecution, he requested a hearing "be set on a future date to be determined by" the court.  The court set the hearing for June 26 — twenty-three days before the ninety-one-day period expired.

¶ 17     Quezada then moved to continue the hearing again, indicating for a second time that the date should be determined by the district court.  He made no mention of the statutory deadline for determining the restitution amount.  Furthermore, when the prosecution explicitly asked the court to make a finding that there was good cause to set the hearing outside the ninety-one-day period and that Quezada had waived his right to have restitution be determined sooner, Quezada made no objection.

¶ 18     Based on this record, we conclude Quezada waived his right to have restitution determined within ninety-one days.  Unlike in *Weeks*, Quezada did not assert his statutory right before the ninety-one-day deadline lapsed.  In fact, he *never* asserted his right under section 18-1.3-603(1)(b) until this appeal.  Instead, Quezada repeatedly asked the court to set a restitution hearing at its own convenience.  He did not object when the court set the restitution

hearing outside the ninety-one-day period, even when the prosecution specifically raised the issue of waiver. And when the court apparently forgot to enter an order after the hearing, it was the prosecution — not Quezada — that nudged the court to make a final determination.

¶ 19    To be sure, the court far exceeded the thirty days it found would be necessary to determine restitution. We do not condone its failure to enter an order in a timely manner. But we also cannot overlook that Quezada waived his right to challenge the court's eventual order on timeliness grounds.

¶ 20    Indeed, in *Roberson*, ¶ 17, the supreme court found that a defendant's failure to object to a hearing outside the statutory deadline and repeated requests for continuances "all without any mention of the ninety-one-day deadline despite numerous opportunities to do so" constituted a voluntary waiver of the statutory right provided by section 18-1.3-603(1)(b). Similarly, here, we conclude Quezada's repeated requests for a hearing to be set on a date determined by the district court, combined with his failure to object to a hearing outside the statutory period or to raise the issue at any point before this appeal, "reflects 'conduct that

manifests an intent to relinquish a right or privilege.'" *Roberson*, ¶ 17 (quoting *Forgette v. People*, 2023 CO 4, ¶ 28). Because waiver extinguishes error and appellate review, *id.* at ¶ 13, we do not consider Quezada's argument that the district court lacked authority to order restitution.

## III. Insurance Settlement Setoff

¶ 21 Quezada next asserts the district court abused its discretion by not deducting Kabbara's insurance settlement award from Quezada's restitution obligation. We discern no error.

### A. Applicable Law

¶ 22 We review a district court's restitution award for an abuse of discretion. *People v. Gregory*, 2019 COA 184, ¶ 21. A court abuses its discretion when it misconstrues or misapplies the law or when its decision fixing the amount of restitution is not supported by the record. *Id.* We will not disturb the court's determination as to the amount of restitution if it is supported by the record. *Id.*

¶ 23 Restitution is "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2025. A court may not award restitution to a

victim for a pecuniary loss if the victim has received or is entitled to receive benefits or reimbursement under an insurance policy. § 18-1.3-603(8)(c)(1), C.R.S. 2025.

¶ 24  The prosecution bears the burden of proving the amount of restitution owed by a preponderance of the evidence, while the defendant bears the burden of proving any setoff. *Gregory*, ¶ 25. When a settlement agreement is clearly intended to cover all categories of loss for which restitution could be imposed, the defendant has met his burden of proving a setoff. *Id.* at ¶ 29. The prosecution may then rebut the inference that a double recovery has occurred. *People v. Stanley*, 2017 COA 121, ¶ 34. It can do so by showing that the victim used the settlement proceeds for losses proximately caused by the defendant's criminal conduct but which were not covered by the restitution order. *Id.*

## B.  Discussion

¶ 25  After the collision, Kabbara settled with Quezada's insurance company for $25,000.00 in exchange for releasing Quezada "from any and all claims, causes of action, obligations and liabilities arising from or related to any bodily injury due to" the accident. Of the settlement proceeds, $8,000.00 was paid to Kabbara, with the

rest being used for Medicaid medical services and attorney fees and costs.

¶ 26    As discussed, the prosecution's request for $29,793.90 in restitution included $34,500.00 for Kabbara's double knee replacement surgery, plus $3,293.90 for non-Medicaid medical services, minus the $8,000.00 that Kabbara received in the settlement.

¶ 27    On this record, we conclude the district court properly determined there was no double recovery. Quezada argues the court should have offset the part of the settlement that Kabbara used to pay his attorney fees from the restitution award. But beyond citing *Stanley*, where there is no discussion of attorney fees whatsoever, he does not support his position with any authority. Likewise, while Quezada argues that neither the prosecution nor the district court cited authority to suggest that attorney fees are compensable as restitution, he does not indicate how the court's failure to cite authority amounts to an abuse of discretion. Because these arguments are undeveloped, we do not consider them. *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd*, 2023 CO 22.

¶ 28    More importantly, despite how Quezada frames this issue on appeal, the prosecution did not seek restitution for attorney fees. Instead, as described above, its restitution request specifically sought to cover non-Medicaid medical expenses. Quezada does not develop his argument that portions of the settlement award were "for some of the same damages at issue in the restitution order." And while the comprehensive settlement agreement may have created an inference of double recovery, *see Gregory*, ¶ 29, we conclude the prosecution effectively rebutted this inference by showing that all but $8,000.00 of the proceeds were used for losses not covered by the restitution order, *see Stanley*, ¶ 34. Accordingly, no additional setoff was required.

IV.    Cost of Future Medical Treatment

¶ 29    Finally, Quezada challenges the award of $34,500.00 to cover Kabbara's future knee replacement surgery in Lebanon. We conclude the evidence was sufficient to support the court's order.

¶ 30    Under section 18-1.3-603(1)(c), a court is authorized to impose restitution for the actual cost of specific future treatment. In a sufficiency challenge, we review the record de novo to determine whether the evidence, viewed as a whole and in the light most

11

favorable to the prosecution, was sufficient in both quantity and quality to support the order by a preponderance of the evidence. *People v. Fregosi*, 2024 COA 6, ¶ 40; *Gregory*, ¶ 25.

¶ 31    The prosecution supported its restitution request with invoices detailing preliminary diagnostics, x-rays illustrating the severity of Kabbara's injuries, and letters from his orthopedic surgeon estimating the cost of necessary surgery at $34,500.00.  At the restitution hearing, Kabbara also testified that he required a double knee replacement due to the collision, and his surgeon estimated each knee replacement would cost $12,000.00 for equipment alone, assuming no complications.  He testified that it was his understanding that the surgery might "cost more, but its baseline is $34,500."

¶ 32    Viewing this evidence in the light most favorable to the prosecution, we conclude it was sufficient to support the restitution order.  Quezada argues the letter from Kabbara's surgeon was "from an unverified physician in another country who did not testify" and whose estimate was provided in dollars, rather than Lebanese pounds.  But nothing in the record suggests that Kabbara's surgeon was not qualified to make such an estimate or do so in American

dollars.  Nor does Quezada explain how the lack of an itemized invoice or scheduled surgery date precludes recovery for "specific future treatment" under section 18-1.3-603(1)(c).  *See Liggett*, ¶ 53 (we do not address undeveloped arguments).  Because we conclude the surgeon's letter was sufficient to support the restitution award, we affirm.

## V.    Disposition

¶ 33    The order is affirmed.

JUDGE FREYRE and JUDGE YUN concur.